1817.

*Sunbury.*

*Monday,*
June 9.

IN ERROR.

ASH and others administrators of CRAIG *against*
PATTON administrator of PATTON.

*Letters writ-
ten by the de-
fendant's in-
testate to the
plaintiff's in-
testate and
the plaintiff
jointly, and to
the plain-
tiff separate-
ly, which
seemingly in-
dicate a joint
debt, but not
conclusively,
are admissible
in evidence in
a suit for mo-
ney paid by the
plaintiff's in-
testate, to the
use of the de-
fendants in-
testate.*

*An adminis-
trator who
was the intes-
tate's clerk,
is a good wit-
ness in a suit
in which he is
plaintiff, to
prove a book
to be the book
of original en-
tries of his in-
testate, and
that he him-
self made cer-
tain original
entries in that
book, if it do
not appear
that there is
any person li-
ving, who can
make that
proof, and
the other
clerks of the
intestate are
dead.*

ERROR to the Court of Common Pleas of *Northum-
berland* county.

This was an *indebitatus assumpsit*, brought by *James Ash*
and others, administrators of *James Craig*, deceased, against
*John Patton*, administrator of *John Patton*, deceased. The
declaration contained counts for goods sold and delivered,
money had and received, money paid and expended, and
money lent. The pleas were *non assumpsit*, payment, and
*non assumpsit infra sex. annos.*

On the trial in the Court below, *James Ash*, the admi-
nistrator of *James Craig*, deceased, and one of the plaintiffs
in this suit, was offered as a witness on behalf of the plain-
tiffs, to prove, that certain books produced, were the books
of original entries, of the intestate, *Craig;* that some of the
items in those books were in the handwriting of *James
Craig;* some in the handwriting of the witness *James Ash*,
who had made them as clerk of *James Craig;* that other en-
tries in these books were made by other clerks of *James Craig*
in his lifetime, who were now dead. *James Ash*, before
being offered as a witness, had released to *J. B. Guenat*, for
the use of himself, and the other legal representatives of
*James Craig*, deceased, all monies which he might, or could
receive, by means of this suit, either as commission, or other-
wise. To this witness the defendant objected, and the Court
rejected him. The plaintiffs thereupon tendered a bill of
exceptions.

The plaintiffs, having paid all the costs in this suit, offered
*James Ash* again as a witness, for the same purposes as be-

In order to remove the objection to a plaintiff's evidence, on the ground, that he is liable for
costs, it is necessary, that not only the costs which had accrued, but those which might accrue,
should be paid, and that the plaintiff should stipulate, that in no event, should these costs be re-
funded.

fore. But he was again rejected by the Court, on the defendant's objection, and an exception taken by the plaintiffs.

The plaintiffs also offered in evidence a letter from *John Patton*, the intestate, directed to *James Ash*, dated the 7th *June*, 1795, proved to be in the handwriting of the said *Patton*, in which *Patton* said, " in the course of a few " days, I shall make you a remittance, on account of the ac- " commodation, which you and my friend *Craig*, procured " for me at the bank." And also another letter, dated the 22d *March*, 1796, from the said *Patton* to *James Craig*, the intestate, and *James Ash*, in which he said, " it would " have gone hard enough with me had it not been for your " aid, which you have been illy rewarded for." To the admission of these letters in evidence the defendants objected, and the Court sustained the objection, and sealed two other bills of exceptions.

Two other bills of exceptions were taken by the plaintiffs to the opinion of the Court, in rejecting certain notes offered in evidence by the plaintiffs, but the notes were not annexed to the record, and the Court gave no opinion on these points.

*Levy* and *Fisher*, for the plaintiffs.

*Craig* himself, if living would, by the law of this state, have been a good witness to prove his books of original entries, and, therefore, his administrator may be. The plaintiff would have been a good witness, in such case, to prove his own entries. Here the other clerks were dead, and the only evidence that could be had was that of their handwriting. *Ash*, after his commissions were released and the costs were paid, had no longer any interest. He was merely a nominal plaintiff, and, therefore, an unobjectionable witness. *Steele* v. *The Phœnix Insurance Company*,(a) *Hubert* v. *Haine*,(b) An executor is not liable to costs when plaintiff. 1 *Str.* 682. *Sayre*, 94. 100. A bare possibility of being liable to suit, does not make a witness incompetent. 5 *Johns.* 356. 1 *Johns.* 491. 1 *Johns. Cas.* 270. 1 *Caines*, 168.

The letters went to shew money advanced by *Craig* to *Patton*. It is not sufficient answer to say, that they prove a joint contract. Each might have raised money by notes drawn and indorsed separately.

*1817.*

*ASH and others administrators of CRAIG v. PATTON administrator of PATTON.*

(a) 3 *Binn.* 206.     (b) 6 *Binn.* 16.

Ash
and others
administrators
of Craig
*v.*
Patton
administrator
of Patton.

*Watts* and *Hall*, contra.

The release by *Ash* did not discharge him from liability, in case of misconduct as administrator. Besides, the costs were only paid up to the time of paying them, not including those that were to accrue afterwards. The costs of this suit in error were not paid. The case of *Hubert* v. *Haine* proves, that all future costs must be paid. Could he be a witness though interested? A man may prove his own book to be a book of original entries, from *necessity ;* but that is no reason why any other person should prove this by his own oath, if he is plaintiff. Any other person might as well prove this to be a book of original entries as *Ash.* The handwriting of the clerks might also have been proved by other witnesses.

The letters were not evidence, because they proved debts due to *Ash* and *Craig* jointly. Besides, it was incumbent on the plaintiffs to prove an *assumpsit* within six years, before they could prove an *assumpsit* beyond six years.

Tilghman C. J. This is an action on the case, by the administrators of *James Craig*, deceased, against the administrators of *John Patton*, deceased. The narr. contains counts, for goods sold and delivered, for money paid, for money lent, and for money had and received, &c.

Six bills of exceptions were taken in the course of the trial, by the counsel for the plaintiffs. One exception was to the rejection of a letter from *Patton* to *James Ash*, (one of the plaintiffs,) dated 7th *June*, 1795 ; and another, to the rejection of a letter from *Patton* to *James Craig*, (the intestate,) and *James Ash*, dated 22d *March*, 1796, both which were offered in evidence by the plaintiff. In the first of these letters, *Patton* says, " In the course of a few days, I shall make " you a remittance on account of the accommodation which " you and my friend *Craig* procured for me at the bank." In the last letter, he says, " it would have gone hard enough " with me, had it not been for your aid, which you have been " illy rewarded for." The objection to these letters is, that they shew a debt due to *Craig* and *Ash*, jointly. It is true, that they rather seem to indicate a joint debt ; but not conclusively ; the expressions are open to explanation. It might be, that both *Craig* and *Ash*, had assisted *Patton*, by procuring money on discount from the bank, and yet each might have separate demands against him. One might have drawn

a note, and the other indorsed it, or both might have indors-
ed for *Patton*, and on his failing to take up the note, they
might each have made payments to the bank, for which their
claim against *Patton* would be separate. Supposing this to
be the case, the expressions before-mentioned in the rejected
letters, would be very proper. It will be recollected, that
the action is not brought *on these letters*, but they are offered
as evidence applicable to the count for money paid by *Craig*
for the use of *Patton.* They would be no more than intro-
ductory matter, and if not followed by something more point-
ed, would be of no avail. I am of opinion, however, that
they should have been read.

Ash
and others
administrators
of Craig
v.
Patton
administrator
of Patton.

Two other exceptions were taken to the opinion of the
Court against the admission of *James Ash* as a witness.
After being once rejected, he was offered a second time;
having released all his interest in the estate of *James Craig*,
and all claim for commissions on the amount of the debt de-
manded in this suit, and having also 'paid the costs of this
suit. In order to remove the objection of *interest*, it was ne-
cessary, that the whole costs, not only those which had ac-
crued, but those which might accrue, should be paid, and
that the plaintiff should stipulate, that in no event should
those costs be refunded. It does not appear, that all this
was done, and therefore I do not think the objection was
removed. But was not *James Ash* a witness, for some pur-
poses, although one of the plaintiffs? If *Craig* had been
alive, and plaintiff, he would have been a witness for the pur-
pose of proving, that the book offered in evidence was his
book of original entries; and it seems to me, that *Ash* might
have been a witness for the same purpose; because it did
not appear, that there was any other person living, who could
make that proof. *Ash* had been *Craig*'s clerk, and all the
other clerks were dead. The evidence in these cases, is
an exception from the general rule, and is justified *from ne-*
*cessity.* I am, therefore, of opinion, that *James Ash* should
have been received as a witness, solely for the purpose of
proving, that the book of *Craig*'s was kept as a book of ori-
ginal entries, and that he, himself, made certain original
entries in that book.

The two remaining exceptions, are to the opinion of the
Court, in rejecting certain notes offered in evidence b the
plaintiff. Those notes ought to have been annexed to the re-

1817.

Ash
and others
administrators
of Craig
v.
Patton
administrator
of Patton.

cord, but are not; and therefore, I cannot with propriety, give an opinion on these exceptions.

Upon the whole, the judgment must be reversed, and a *venire facias de novo* awarded.

Gibson J. 1. The interest which the plaintiff was supposed to have in the *money* to be recovered in this suit, was at most contingent, and not sufficient to exclude him, even if he had not released. He was not, by law, entitled to a commission, and the Orphan's Court might have refused him an allowance on that ground, in the settlement of his account. But he had an interest in the costs of the suit, and a payment of all the costs, unaccompanied with a deposit of a sum sufficient to cover costs that might accrue thereafter, was insufficient to remove it. But he had no other interest. It is true, if he squandered the assets wantonly, in the prosecution of a suit, where there was no prospect of a recovery, he would render himself liable for a *devastavit;* and hence it is said he would have a particular interest in effecting a recovery in this suit. But a mere possibility that a witness may be liable to an action, is a contingent interest, and will not exclude him. But notwithstanding the plaintiff was interested, he was clearly competent to prove the entries made by him as the clerk of *Craig*, but no further. On what ground but pure necessity is a party admitted to prove entries made by himself in his own books? Evidence of the handwriting of the person is not equal to proof that the book contains the original entries made at the time; and this, in the nature of things, can only be had from the person who made such entries. If they were made by a clerk, he must be called. But when the clerk himself becomes interested in the suit, there is the same necessity for admitting him, that exists where a party has been his own book-keeper. For some purposes, then, the plaintiff was competent, and he should not have been rejected entirely.

2. I am at a loss to discover on what ground the letters of the 7th *June*, 1795, and the 22d *March*, 1796, were excluded. It is said they were impertinent to the issue; but both these letters contain pretty strong acknowledgments of indebtedness and promises of payment. It is true, the amount due is not specified, nor is the nature of the transactions between the parties developed; but enough appears to shew,

that *Patton* was indebted to *Craig* at the time; the amount and the particulars of the transactions between the parties might have been supplied by other proof. These letters may have formed a link in the plaintiffs' chain, and were clearly admissible under the issue of *non assumpsit*. I am, therefore, of opinion that the judgment should be reversed.

1817.
———
ASH
and others
administrators
of CRAIG
*v.*
PATTON
administrator
of PATTON.

DUNCAN J. gave no opinion; having been counsel in the cause.

> Judgment reversed, and a *venire facias de novo* awarded.